IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| *TEODOLFO SALCEDO-VAZQUEZ*, #M21621, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Cause No. 13-cv-00606-NJR-DGW ) |
| *S. NWAOBASI, E. FUENTES, JOHN/JANE DOE, and WEXFORD HEALTH SOURCES, INC.* | ) ) ) ) |
| Defendants. | ) ) ) |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

COME NOW Defendants Wexford Health Sources, Inc. and Dr. Samuel Nwaobasi, by and through their attorneys Sandberg Phoenix & von Gontard, and for their Memorandum of Law in Support of Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56, state as follows:

**INTRODUCTION**

Plaintiff, currently incarcerated at Hill Correctional Center, filed this cause of action against Dr. Nwaobasi and Wexford Health Sources, Inc. ("Wexford"), claiming Defendants were deliberately indifferent to a tumor on his left shoulder.[1] The Court conducted a preliminary review of Plaintiff's Complaint pursuant to 28 U.S.C. §1915A and divided Plaintiff's allegations into three counts; 1) Count I: deliberate indifference by Dr. Nwaobasi and Wexford to Plaintiff's lipoma prior to May 17, 2012 (when the lipoma was removed); 2) Count II: deliberate indifference by Dr. Nwaobasi to Plaintiff's lipoma during the surgical removal of the lipoma;

---

[1] The "tumor" was biopsied and diagnosed a lipoma, which refers to a non-cancerous mass composed of fibrous and fatty tissue. See Statement of Undisputed Material Facts, ¶12 *infra*.

and 3) Count III: deliberate indifference by Wexford for failure to give Plaintiff his prescribed medication following the lipoma removal surgery. Doc. 7.

Plaintiff was deposed and his deposition transcript is attached herein as Exhibit 1. Plaintiff's deposition transcript, along with the pertinent medical records, (attached as Exhibit 2), and an affidavit from Dr. Nwaobasi (attached as Exhibit 3)[2] establish that no reasonable jury could find either Dr. Nwaobasi or Wexford were deliberately indifferent to the lipoma on Plaintiff's left shoulder.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Plaintiff arrived at Stateville Northern Reception Center (an intake facility for the Illinois Department of Corrections) in June 2011. Ex. 1, p. 9: 1-3. A physician assessed him and noted that he had a sebaceous cyst on his left upper back that was approximately 4-5 inches. Ex. 2, p. 1; Ex. 3, ¶3.

2. Plaintiff transferred from Stateville to Menard Correctional Center approximately one week later. Ex. 1, p. 13: 11-12; Ex. 3, ¶4.

3. Dr. Nwaobasi saw Plaintiff for the first time on July 1, 2011. Ex. 1, p. 13: 13-15. Dr. Nwaobasi noted that he had a tender mass near his left shoulder. Ex. 2, p. 2; Ex. 3, ¶6. Plaintiff communicated to Dr. Nwaobasi that the mass was painful. *Id*. Dr. Nwaobasi examined the mass and noted that it was minimally mobile and it appeared to be attached to his scapula (shoulder blade) muscle. *Id*. Dr. Nwaobasi checked Plaintiff's supraclavicular lymph nodes (lymph nodes near his collarbone) for swelling, to rule out the presence of pathogens (infectious agents) in his body. *Id*. Dr. Nwaobasi ordered an x-ray and ultrasound of his left shoulder and prescribed Motrin (a non-steroidal anti-inflammatory pain medication), 200 milligrams to be

---

[2] Dr. Nwaobasi was unable to get his notarized affidavit to the undersigned counsel by 8/21/15. Dr. Nwaobasi has approved his affidavit, and it has been signed and notarized and the undersigned counsel will supplement this pleading with the signed, notarized affidavit immediately upon receipt.

taken three times daily. *Id*. Dr. Nwaobasi also ordered a follow-up appointment in 10 days and a complete blood count to determine any abnormalities in Plaintiff's blood cells. *Id*. Abnormalities in complete blood cell count tests are sometimes a sign that a person has cancer, and Dr. Nwaobasi wanted to rule out the possibility that the mass was cancerous. *Id*.

   4.  When Dr. Nwaobasi ordered follow-up appointments and diagnostic testing (e.g., x-rays, ultrasound) for an inmate at Menard Correctional Center, he relied on the correctional officers to bring the inmate back to the health care unit and the other members of the health care staff to arrange for the follow-up appointment or testing Ex. 3, ¶7.

   5.  Plaintiff underwent the complete blood cell count test on July 1, 2011. Ex. 2, p. 3; Ex. 3, ¶8. The results were normal. *Id*.

   6.  Plaintiff left Menard on a court writ in July 2011. Ex. 1, p. 14: 17-19. When he returned, he saw Nurse Practitioner Kimberly Criss on August 4th, 2011. Ex. 2, p. 4; Ex. 3, ¶9. She noted that the ultrasound had not been performed because Plaintiff had been on a court writ. *Id*. She prescribed more Motrin to Plaintiff and wrote that she would notify the radiology department that he was back from the court writ. *Id*.

   7.  On August 24, 2011, Dr. Fuentes saw Plaintiff. Ex. 1, p. 15: 7-9. She noted that he complained of pain and numbness in his left fingers. Ex. 2, p. 5; Ex. 3, ¶10. She also noted that she would confer with another physician about Plaintiff's condition. *Id*.

   8.  Plaintiff was seen by a nurse on September 27, 2011. Ex. 2, p. 6; Ex. 3, ¶11. He informed the nurse that the tumor was getting bigger and it was painful. *Id*. The nurse referred Plaintiff to the nurse practitioner. *Id*.

   9.  Nurse Practitioner Kimberley Criss saw Plaintiff on September 28, 2011. Ex. 1, p. 16: 20-22. He told her that he felt numbness in his hand and leg. Ex. 2, p. 6: Ex. 3, ¶12. The

sensation of numbness can be an indication of nerve pain. Ex. 3, ¶12. She prescribed Neurontin to Plaintiff, which is a pain medication specifically for nerve damage. *Id*. She also prescribed Indomethacin, which is a non-steroidal anti-inflammatory pain medication. *Id*.

10. The ultrasound was performed on October 6, 2011. Ex. 2, p. 8; Ex. 3, ¶13. The results of the ultrasound were inconclusive. *Id*.

11. Dr. Nwaobasi treated Plaintiff on October 14, 2011. Ex. 2, p. 9; Ex. 3, ¶14. Dr. Nwaobasi noted that Plaintiff had significant tenderness and pain around the mass. *Id*. Dr. Nwaobasi recommended that he undergo an excision biopsy (where part of the tissue is removed) and Dr. Nwaobasi also prescribed Ultram, a pain medication used to treat moderate to moderately severe pain. *Id*. Dr. Nwaobasi also ordered a "front cuff permit" for him, which would allow him to be handcuffed in the front, rather than the back, so that handcuffing did not exacerbate the tenderness around the mass. Ex. 2, p. 10; Ex. 3, ¶14.

12. Plaintiff underwent a punch biopsy on November 22, 2011 at Memorial Hospital in Carbondale, Illinois. Ex. 2, p. 11-13; Ex. 3, ¶15. *See also* Ex. 1, p. 18: 10-15. A punch biopsy is one where the tissue is removed using a circular blade to remove deep layers of skin. Ex. 3, ¶15. The tissue removed appeared to be "benign fibroadipose tissue." *Id*.; Ex. 2, p. 12. This means the mass was not cancerous and it consisted of fibrous material and fatty tissue. Ex. 3, ¶15. The tissue was examined by a pathologist with the University of Illinois Medical Center, whose final diagnosis was that the mass was a lipoma, which refers to a non-cancerous mass composed of fibrous and fatty tissue. *Id*.; Ex. 2, p. 13. At the time of the biopsy, the mass measured approximately 11 centimeters long and 8.5 centimeters wide. Ex. 2, p. 13; Ex. 3, ¶15.

13. Dr. Nwaobasi treated Plaintiff the morning after his biopsy. Ex. 2, p. 14; Ex. 3, ¶16. Dr. Nwaobasi ordered more Ultram for him to last two months. *Id*. Dr. Nwaobasi noted that

his puncture wound (where the tissue was removed) was dry. *Id*.

14. Dr. John Shepherd treated Plaintiff on December 14, 2011. Ex. 2, p. 15; Ex. 3, ¶17. Dr. Shepherd noted that since the biopsy, Plaintiff was having difficult climbing on to the top bunk. *Id*. Dr. Shepherd issued Plaintiff a low-bunk permit, which is a permit that requires him to be assigned to sleep in a lower bunk. *Id*. Dr. Shepherd also prescribed Tylenol Extra Strength (pain medication) to Plaintiff to take in addition to the Ultram. *Id*.

15. Dr. Shepherd saw Plaintiff again on January 13, 2012. Ex. 2, p. 16; Ex. 3, ¶18. Plaintiff reported that he was having pain, especially at night. *Id*. Dr. Shepherd renewed Plaintiff's prescriptions for Tylenol Extra Strength and Ultram, and also ordered Neurontin for him. *Id*.

16. Dr. Shepherd saw Plaintiff again on April 18, 2012. Ex. 2, p. 17; Ex. 3, ¶19. Dr. Shepherd renewed Plaintiff's pain medication prescriptions. *Id*.

17. On May 9th, 2012, Plaintiff submitted a grievance at Menard Correctional Center that stated "I need to see the Doctor, to get tumor removed that's what I am asking for please." Exhibit 4, Plaintiff's grievance records from Menard Correctional Center, p. 4.

18. Dr. Nwaobasi treated Plaintiff on May 16, 2012. Ex. 2, p. 18; Ex. 3, ¶20. Dr. Nwaobasi understood that Plaintiff wanted the lipoma removed. Ex. 3, ¶20. Dr. Nwaobasi completed a residency in general surgery and because of his background in general surgery, had the knowledge, skill education, and experience to perform simple surgeries that only required local anesthetic, which is a medicine that blocks sensations of pain from a specific area of the body. Ex. 3, ¶1.

19. On May 17, 2012 Dr. Nwaobasi removed Plaintiff's lipoma. Ex. 2, p. 18; Ex. 3, ¶21. First, the area around Plaintiff's lipoma was cleaned. Ex. 3, ¶21. Xylocaine 2% was applied

to Plaintiff's lipoma and the surrounding area. *Id*.; Ex. 2, p. 18.  Xylocaine 2% is a local anesthetic commonly used for simple surgeries. Ex. 3, ¶21.   Dr. Nwaobasi removed the lipoma and inserted a Pennrose drain into the wound, which would allow the wound to drain and decrease the risk that it would become infected. Ex. 2, p. 18; Ex. 3, ¶21. Dr. Nwaobasi stitched the wound and the nurses dressed it with bandages. *Id*. Dr. Nwaobasi ordered that Plaintiff be kept in the health care unit for 23 hours for observation. *Id*. Dr. Nwaobasi ordered that Plaintiff be given Tylenol with codeine. *Id*. Codeine is a narcotic pain medication that can be used to treat moderate to severe pain. *Id*.

20. Dr. Nwaobasi did not dispense medication to inmates at Menard Correctional Center. Ex. 3, ¶22.  When Dr. Nwaobasi ordered that an inmate receive a certain medication, Dr. Nwaobasi relied on the health care unit staff to dispense the medication to the inmate. *Id*. Dr. Nwaobasi did not discontinue Plaintiff's Ultram and Neurontin medications following his lipoma removal, nor did any other physician. *Id*. Dr. Nwaobasi simply added another pain medication (Tylenol with codeine) for Plaintiff to take following the removal of his lipoma. *Id*. According to the Medication Administration Records, Plaintiff received the Tylenol with codeine, Neurontin, and Ultram in May 2012 following the removal of his lipoma. *Id*.; Ex. 2, p. 30. See also, Ex. 1, p. 23: 24-25.

21. Dr. Nwaobasi discharged Plaintiff from the Health Care Unit on May 18, 2012. Ex. 2, p. 19; Ex. 3, ¶23. Dr. Nwaobasi removed the Pennrose drain and ordered that his dressing be changed. *Id*.

22. Dr. Nwaobasi treated Plaintiff again on May 23, 2012. Ex. 2, p. 20; Ex. 3, ¶24. Dr. Nwaobasi saw that a pocket of clear fluid (called a "seroma") developed in the excision site. *Id*. Dr. Nwaobasi aspirated (removed) the fluid and the nurses and Dr. Nwaobasi applied

pressure dressing. *Id*. Dr. Nwaobasi ordered that his pressure dressing be changed every three days for three weeks. *Id*. Dr. Nwaobasi aspirated the fluid for two reasons. Ex. 3, ¶24. First, fluid can become a reservoir for bacteria, so aspirating reduced the risk of infection. *Id*. Second, the fluid had to be aspirated to make sure it was not purulent (containing pus), which would be a sign of infection. *Id*. The fluid that Dr. Nwaobasi aspirated from the wound on May 23, 2012 was not purulent. *Id*.

23.     Dr. Shepherd aspirated Plaintiff's wound site on May 29, 2012. Ex. 2, p. 21; Ex. 3, ¶25. He noted that the fluid he aspirated was serosanguinous, which means it contained serum (the clear liquid component of blood, minus the blood cells) and blood but was not purulent. *Id*.

24.     Dr. Nwaobasi saw Plaintiff on June 1, 2012. Ex. 2, p. 22; Ex. 3, ¶26. Dr. Nwaobasi noted that the incision wound was clean and he aspirated the wound site. *Id*. The aspirated fluid was serous (clear) fluid only, indicating the wound was not infected. Plaintiff's pressure dressing was re-applied. *Id*.

25.     Dr. Nwaobasi saw Plaintiff on June 8, 2012. Ex. 2, p. 23; Ex. 3, ¶27. All of Plaintiff's stitches were removed. *Id*. Dr. Nwaobasi ordered that Plaintiff's dressing be changed every other day and hydrocortisone cream be applied. *Id*. The purpose of the hydrocortisone cream was to prevent infection and swelling. Ex. 3, ¶27.

26.     Dr. Nwaobasi treated Plaintiff on June 20, 2012. Ex. 2, p. 24; Ex. 3, ¶28. Dr. Nwaobasi noted that Plaintiff's wound continued to heal. *Id*. Dr. Nwaobasi ordered that Plaintiff's dressing be changed every three days and Dr. Nwaobasi would follow up with him in one month. *Id*.

27.     Dr. Nwaobasi treated Plaintiff on August 4, 2012. Ex. 2, p. 25; Ex. 3, ¶29. Plaintiff complained of left shoulder pain. *Id*. Dr. Nwaobasi prescribed Tylenol, 325 mg to be

taken three times daily for the next month and Robaxin, 500 mg to be taken twice daily for the next two months. *Id*. Robaxin is a muscle relaxant that relieves muscular pain. Ex. 3, ¶29.

28. Nurse Practitioner Rashida Pollion treated Plaintiff on September 21, 2012. Ex. 2, p. 26; Ex. 3, ¶30. Plaintiff complained of pain and tingling to his left shoulder region. *Id*. According to Nurse Practitioner Pollion's notes, she examined the area and saw no evidence of drainage (which would be a sign of infection). *Id*. There was a scar, but the wound had healed. She prescribed Neurontin to Plaintiff and issued more Tylenol to him. *Id*.

29. Dr. Shepherd saw Plaintiff on October 17, 2012. Ex. 2, p. 27; Ex. 3, ¶31. Dr. Shepherd prescribed Motrin to him and renewed his front cuff permit. *Id*.

30. Dr. Nwaobasi treated Plaintiff on November 14, 2012. Ex. 2, p. 28; Ex. 3, ¶32. Dr. Nwaobasi examined Plaintiff's left shoulder area. *Id*. The wound had healed. *Id*. There was no swelling or redness. *Id*. Dr. Nwaobasi renewed Plaintiff's Motrin prescription and Tylenol prescription. *Id*.

## **LAW AND ARGUMENT**

Plaintiff's claims against Dr. Nwaobasi and Wexford are brought pursuant to 42 U.S.C. § 1983. The Eighth Amendment to the United States Constitution mandates humane conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). To that end, prison officials must provide prisoners with adequate medical care. *Id*.

### A. Dr. Nwaobasi

To establish that Dr. Nwaobasi violated Plaintiff's Eighth Amendment rights, Plaintiff must show that his lipoma constituted a serious medical need. *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002). Plaintiff must also prove that Dr. Nwaobasi knew the serious medical need placed Plaintiff at a substantial risk of harm. *Id*. Whether Dr. Nwaobasi knew that Plaintiff

was at a substantial risk of harm is a subjective inquiry. *Id*. Furthermore, Plaintiff must also prove that Dr. Nwaobasi "acted or failed to act in disregard of that risk." *Id*. Whether Plaintiff had a serious medical need is judged objectively. *Id*. Whether Dr. Nwaobasi acted or failed to act in disregard of that risk is also a subjective inquiry. *Id*. Finally, Plaintiff must prove that Dr. Nwaobasi's actions caused Plaintiff injury or a serious risk of injury. *Id*.

There are two counts pending against Dr. Nwaobasi. Doc. 7. Count I is for deliberate indifference to Plaintiff's lipoma prior to the May 17, 2012 surgery. *Id*. Count II is for deliberate indifference to Plaintiff's lipoma during the surgery. *Id*. For both counts, the decisive inquiries are 1) whether Dr. Nwaobasi was aware that Plaintiff had a serious medical need that placed him at a substantial risk of harm and 2) whether Dr. Nwaobasi acted or failed to act in disregard of that risk. Plaintiff must show that Dr. Nwaobasi was aware of facts from which one could infer that Plaintiff was at a substantial risk of serious harm, and Plaintiff must show that Dr. Nwaobasi actually drew that inference. *Farmer v. Brennan*, 114 U.S. 825, 837 (1994). A prisoner is not entitled to specific treatment, or the best care possible. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Instead, he is entitled to reasonable treatment to meet a substantial risk of serious harm. *Id*.

It is important to note what deliberate indifference (i.e., action or failure to act in disregard of a substantial risk of harm to the inmate) is *not*. *See id*. Negligence is not deliberate indifference. *Walker*, 293 F.3d at 1038. Medical malpractice is not deliberate indifference. *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996). Mistakes are not deliberate indifference. *Forbes*, 112 F.3d at 267, *citing Duane v. Lane*, 959 F.2d 673 (7th Cir. 1992). The fact that a prisoner did not receive the medical treatment he wanted to receive does not constitute deliberate indifference. *Snipes*, 95 F.3d at 592. The standard required for deliberate indifference "is

comparable to criminal recklessness." *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2011) *citing Farmer*, 511 U.S. at 839.

   I.   **Count I against Dr. Nwaobasi**

No reasonable jury could find that Dr. Nwaobasi was deliberately indifferent to Plaintiff's lipoma prior to the May 17th, 2012 surgery. Plaintiff claims he did not receive "adequate and meaningful" medical treatment for the pain from his lipoma from July 2011-May 2012. The undisputed material facts show otherwise.

From July 1, 2011 through May 16, 2012, Dr. Nwaobasi saw Plaintiff four times. He ordered a battery of diagnostic tests, including a blood test and radiology tests. He also recommended a biopsy, which Plaintiff underwent. Dr. Nwaobasi ruled out cancer and infection as potential causes for Plaintiff's lipoma. Dr. Nwaobasi ordered both Motrin and Ultram for Plaintiff, which Plaintiff received in addition to the pain medications other physicians prescribed for him. Dr. Nwaobasi issued him a front cuff permit so that handcuffing would not increase the pain Plaintiff felt from the lipoma. It is difficult to say what more Dr. Nwaobasi could have done for Plaintiff, apart from removing the lipoma (which he ultimately did). Even if there was other treatment or medication Dr. Nwaobasi could have possibly ordered or recommended for Plaintiff, Plaintiff is not entitled to specific treatment or every possible type of treatment.

At most, Plaintiff can only point to isolated instances from July 2011-May 2012 where his treatment was delayed, e.g., three months passed before Plaintiff underwent the ultrasound. However, isolated delays do not equal deliberate indifference. *Gutierrez v. Peters*, 111 F.3d 1364, 1375 (7th Cir. 1997). For example, in *Gutierrez*, the plaintiff received treatment over a ten month period for an infected cyst. *Id*. at 1374-75. At certain times during that ten month period Plaintiff's treatment was delayed. *Id*. The Seventh Circuit determined that these "isolated

instances of neglect" could not "support a finding of deliberate indifference." *Id*. Instead, the court looked at the totality of care the Plaintiff received over that ten month period. *Id*.

Here, the total care Plaintiff received from July 2011-May 2012 was reasonable. He claims that his complaints of pain were unanswered. But Dr. Nwaobasi and other physicians prescribed multiple types of pain medication to him to try to find something that would alleviate his pain. When Plaintiff complained of numbness and tingling, he received medication specifically tailed for nerve pain. He also received non-steroidal anti-inflammatory pain medications, as well as Ultram and Tylenol. Nothing about the treatment Plaintiff received during that time period could be considered "criminally reckless."

## II. Count II against Dr. Nwaobasi

Plaintiff alleges that Dr. Nwaobasi was deliberately indifferent to Plaintiff's pain during the lipoma removal surgery. Plaintiff admits that he received local anesthetic prior to the lipoma removal. Ex. 1, p. 22: 7-9. According to Plaintiff's version of events, the local anesthetic was not effective at controlling Plaintiff's pain during the removal surgery.

Plaintiff's account of his pain during the lipoma removal surgery is similar to the Plaintiff's allegations in *Snipes v. DeTella*, where Plaintiff Snipes claimed that he had ripped off part of his big toe nail. Snipes, 95 F.3d 586, 588 (7th Cir. 1996). The prison doctor removed the toenail. *Id*. Plaintiff Snipes claimed that the prison doctor was in the process of removing the toenail when "I asked him if he could give me something to deaden the area first. He said 'no', and because of the pain I had already suffered, I had asked him again, and again, after that the time the doctor said "forget it I know what I'm doing go back to your unit." *Id*. The Seventh Circuit affirmed summary judgment in favor of the prison doctor on Snipes' deliberate

indifference claim, noting "it would be absurd to say (as Snipes appears to) that the Constitution requires prison doctors to administer the least painful treatment." *Id*. at 592.

In this case, Plaintiff did receive local anesthetic. It is unclear whether he is claiming what Dr. Nwaobasi should have done differently-administer more local anesthetic, send Plaintiff to an outside medical provider so that he could be sedated during the surgery. Regardless, "the administration of pain killers requires medical expertise and judgment. Using them entails risks that doctors must consider in light of the benefits." *Id*. Furthermore, the Eighth Amendment does not require Dr. Nwaobasi to administer a certain dosage of local anesthetic, nor does the Eighth Amendment require Dr. Nwaobasi to send Plaintiff to an outside medical provider so that he could be sedated during the surgery. *See id*. ("the Constitution is not a medical code that mandates specific treatment"). Because Dr. Nwaobasi had experience as a general surgeon (including the completion of a residency), he was qualified by his knowledge, skills, and training to perform the surgery at Menard.

As the Seventh Circuit noted in *Snipes*, "whether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interference, except in the most extreme situations." *Id*. This is not an extreme situation. There is no question that Plaintiff wanted his lipoma removed-he continued to return to the health care unit, complaining that medication was not alleviating the pain from his lipoma. He submitted a grievance to prison officials at Menard one week prior to his surgery, asking for the lipoma to be removed. Dr. Nwaobasi removed it, after first giving him local anesthetic.

Plaintiff also appears to be claiming that he did not give informed consent for the surgery. He claims that he thought he was going to be sent out for surgery. There was admittedly somewhat of a language barrier between Plaintiff and Dr. Nwaobasi and the health care unit

staff, and the extent of that language barrier is in dispute. Plaintiff claims that there was no interpreter available for him when he was in the healthcare unit, and Dr. Nwaobasi testified through affidavit that an interpreter was available most of the time in the Health Care Unit.

However, even when viewing the evidence in the light most favorable to Plaintiff, he was able to communicate the majority of his symptoms and concerns to the health care unit staff. What he has alleged in his complaint regarding the pain and symptoms he had from the lipoma matches what the physicians and nurse practitioners noted in Plaintiff's chart when they treated him. *Cf.* Doc. 1, ¶16; Ex. 2, p. 6: Ex. 3, ¶12.[3] Plaintiff was also able to conveniently translate certain statements made to him by health care staff in English. *See*, *e.g.*, Ex. 1, p. 22: 7-11, p. 23: 1-14; *see also* Doc. 1, ¶24.

To survive summary judgment, Plaintiff has to establish that his alleged "lack of informed consent" caused him injury. *Cox v. Brubaker*, 558 Fed. Appx. 677, 679 (7th Cir. 2014). Since Plaintiff's lipoma removal surgery, multiple physicians and nurse practitioners have examined the wound site and seen no evidence of infection. Plaintiff alleged that he had "severe pain" before the surgery, and he claims that the pain he had following the surgery is worse. Doc.1. However, he has not provided any evidence to establish that the alleged pain he has now was caused by the lipoma removal surgery.

      **B.    Wexford Health Sources, Inc.**

Wexford cannot be liable under 42 USC 1983 on a *respondeat superior* theory. *Iskander v. Vill. of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982). Wexford can only be liable if Plaintiff establishes 1) Wexford had an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled it constitutes a custom or practice; or (3) the constitutional injury was caused by a person with final policymaking

---

[3] Also compare Ex. 2, p. 6; Ex. 3, ¶11 to Ex. 3, p. 2.

authority. *Cooney v. Chicago Public Sch.*, 943 N.E.2d 23, 29-30 (Ill.App. 1 Dist. 2010*); see also Waters v. City of Chicago*, 580 F.3d 575, 581 (7th. Cir. 2009), *quoting Estate of Sims ex rel. Sims vs v. Cty of Bureau*, 506 F.3d 509, 515 (7th. Cir. 2007). Plaintiff has not established that his alleged injuries were caused by an express policy or widespread practice from Wexford, or by a person with final policymaking authority at Wexford.

I.  **Count I**

In Count I, Plaintiff claims that Wexford was deliberately indifferent to Plaintiff's lipoma prior to his lipoma surgery on May 17th, 2012. However, the undisputed material facts show that Plaintiff received reasonable treatment for his lipoma prior to the surgery. He received a battery of diagnostic testing, including a biopsy. He also received multiple types of pain medication.

Even if Plaintiff had established that a person employed by Wexford was deliberately indifferent to his lipoma, he has certainly failed to establish that said person was deliberately indifferent to Plaintiff's lipoma because of a 1) express Wexford policy; 2) a widespread Wexford practice. Plaintiff has likewise failed to establish any evidence that his Constitutional rights were deprived by a person at Wexford with final policy-making authority. There is no evidence that any of the individuals who treated Plaintiff at Menard prior to May 17, 2012, based their decisions regarding Plaintiff's treatment on anything except Plaintiff's subjective complaints and objective symptoms and diagnostic testing and their own knowledge, skills, and training. Consequently, Wexford is entitled to summary judgment on Count I.

II.  **Count III**

In Count III, Plaintiff alleged that following his surgery a nurse told him "Defendant Nwaobasi was not authorized to cut the tumor and that the prescription medication was discontinued by the health provider." Doc. 1, ¶24. This statement is hearsay and cannot defeat

summary judgment. *Bombard v. Ft. Wayne Newspapers, Inc.,* 92 F.3d 560, 564 (7th Cir. 1996). Moreover, Plaintiff contradicted this allegation at his deposition when he testified that after the surgery, he was given pain medication. Ex. 1, p. 23: 24-25. The medication administration records also show that Plaintiff received that medication.

Furthermore, the undisputed facts show that Dr. Nwaobasi ordered Tylenol with codeine to be given to Plaintiff following the surgery in addition to his other pain medications. Even assuming, *arguendo*, that for some reason Plaintiff was not given that pain medication (though he testified that he did receive it), there is no evidence that an express policy, widespread practice, or person with final policy-making authority is to blame.

Plaintiff also testified that he did not receive post-surgery care from the nurses. Again, the undisputed facts show that Dr. Nwaobasi ordered pain medication and dressing changes. If for some reason the health care staff did not follow through with those orders, Wexford cannot be vicariously liable. *Iskander*, 690 F.2d at 128.

## CONCLUSION

The undisputed facts show that Plaintiff received reasonable care for his lipoma prior to his surgery. The undisputed evidence also shows that Plaintiff wanted his lipoma surgically removed. Even if Plaintiff did not give "informed consent" for the lipoma removal surgery at Menard with local anesthetic, he has not established any evidence that the lipoma removal surgery caused him any injury. Plaintiff has also failed to establish any evidence that the health care unit staff treated his lipoma in any particular manner because of a Wexford policy or practice. Wexford and Dr. Nwaobasi are entitled to summary judgment on all counts.

SANDBERG PHOENIX & von GONTARD P.C.


By: s/Leslie M. Warren
Timothy P. Dugan, #6271610
Leslie M. Warren, #6304239
600 Washington Avenue - 15th Floor
St. Louis, MO 63101-1313
314-231-3332
314-241-7604 (Fax)
E-mail: tdugan@sandbergphoenix.com
lwarren@sandbergphoenix.com

Attorneys for Defendants
Dr. Samuel Nwaobasi and Wexford Health Sources, Inc.


**Certificate of Service**

I hereby certify that on this 21st day of August 2015 the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

Stephen R. Welby
Email: welbylawfirm@yahoo.com

s/Leslie M. Warren